# EXHIBIT A

# SUMMONS - CIVIL
JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

See other side for instructions

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [X] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [ ] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 70 Huntington Street, New London, CT  06320 | ( 860 ) 443-5363 | September 20, 2016 |

| [X] Judicial District   [ ] Housing Session | [ ] G.A. Number: | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) New London | Case type code (See list on page 2) Major: M   Minor: 90 |
|---|---|---|---|

For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C. | 100758 |

| Telephone number (with area code) | Signature of Plaintiff (If self-represented) |
|---|---|
| ( 860 ) 233-9821 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | [X] Yes   [ ] No | Email address for delivery of papers under Section 10-13 (if agreed to) hfmurray@lapm.org |
|---|---|---|

Number of Plaintiffs:     Number of Defendants:     [ ] Form JD-CV-2 attached for additional parties

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: Katelin Noffsinger<br>Address: 8 Highland Street, Manchester, CT 06040 | P-01 |
| Additional Plaintiff | Name:<br>Address: | P-02 |
| First Defendant | Name: SSN Operating Company LLC d/b/a Bride Brook Nursing & Rehabilitation Center<br>Address: 23 Liberty Way, Niantic, CT 06357, c/o of CT Corporation System | D-01 |
| Additional Defendant | Name:<br>Address: | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | [X] Commissioner of the Superior Court   [ ] Assistant Clerk | Name of Person Signing at Left Henry F. Murray | Date signed 8/22/16 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only
File Date

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

Return date: September 20, 2016

| | | |
|---|---|---|
| KATELIN NOFFSINGER | : | SUPERIOR COURT |
| | : | |
| v. | : | J.D. OF NEW LONDON |
| | : | |
| SSN OPERATING COMPANY LLC | : | |
| d/b/a BRIDE BROOK HEALTH & | : | |
| REHABLITATION CENTER | : | AUGUST 22, 2016 |

## COMPLAINT

**COUNT ONE:** **Violation of C.G.S. § 21a-408p - the Palliative Use of Marijuana Statute, Treatment of Student, Tenant or Employee Due to Status as Qualifying Patient or Primary Caregiver.**

1. Plaintiff, Katelin Noffsinger (hereinafter "Ms. Noffsinger" or "plaintiff"), is a resident of Manchester, Connecticut.

2. Defendant, SSN Operating Company LLC, d/b/a Bride Brook Health & Rehabilitation Center (hereinafter "Bride Brook" or "defendant"), is a Delaware corporation with a place of business at 23 Liberty Way, Niantic, Connecticut 06357.

3. The defendant is an "employer" within the meaning of C.G.S. § 21a-408p(a).

4. In 2012, Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), a mental disorder attributed to experiencing a shocking, terrifying, or dangerous event.

5. In 2015, the Plaintiff was prescribed medical marijuana by her physicians to treat a debilitating medical condition, post-traumatic stress disorder (PTSD).

Pursuant to C.G.S. § 21a-408d, the Plaintiff's physicians submitted the required forms to the Department of Consumer Protection ("DCP") to complete her registration as a "qualifying patient" authorizing her to use medical marijuana for palliative care.

6. The Plaintiff was certified as a "qualifying patient" and issued a registration certificate on November 9, 2015.

7. Upon meeting all statutory and regulatory requirements, the Plaintiff began filling her medical marijuana prescription to treat her PTSD. Her prescription was filled by the issuance of capsules for a synthetic form of cannabis called marinol. Plaintiff takes one marinol capsule per day orally in the evening, as prescribed.

8. Since filling her prescription marijuana medication and until August 2, 2016, the Plaintiff was employed as the Assistant Director of Recreational Therapy at Touchpoints in Bloomfield, CT. Touchpoints is a long-term care and rehabilitation provider.

9. During the period of time the Plaintiff has been taking prescription cannabis she has never been impaired or otherwise unable to perform the duties of her job.

10. Plaintiff is a "qualifying patient" within the meaning of C.G.S. § 21a-408a (10).

11. On or about July 11, 2016, the Plaintiff was recruited for a position as the Director of Recreational Therapy at Bride Brook in Niantic, Connecticut.

12. Following a telephone interview with Lisa Mailloux, the Administrator of

2

Bride Brook, Plaintiff had an in-person interview with Ms. Mailloux on July 18, 2018. During that interview Ms. Mailloux offered Plaintiff the job as Director of Recreational Therapy at Bride Brook. The following day the plaintiff called Ms. Mailloux and accepted the job offer.

13. On July 20, 2016, Ms. Mailloux emailed the Plaintiff and scheduled a meeting on July 25, 2016, to complete necessary pre-employment documentation, including routine pre-employment drug testing. On July 20, 2016, in that same conversation, Ms. Mailloux instructed the Plaintiff to give her notice to her then current employer (Touchpoints) so that she could begin working for the Defendant, starting with an orientation session on August 3, 2016. Following that conversation, the Plaintiff informed her then current employer that she would be leaving and that her last day of work would be August 2, 2016.

14. The Plaintiff and Ms. Mailloux met again in-person on July 25, 2016. In that meeting the Plaintiff disclosed her disability of PTSD and explained that she was taking prescription marijuana to treat the condition and that she was a "qualified patient" under the statute. The Plaintiff presented Ms. Mailloux with her Connecticut Department of Consumer Protection registration certificate and explained that she took a capsule form of cannabis called marinol but only in the evening before bed and was never impaired as a result of her medical therapy. The Plaintiff also offered to provide the Defendant with any other medical documentation that it may want to review with respect to her use of synthetic medical marijuana and the underlying condition that

3

qualifies her use of the prescription. In that meeting Ms. Mailloux requested no additional information from the Plaintiff. Following this disclosure, the Defendant continued to process the Plaintiff's pre-employment documents. In addition, the Defendant provided the Plaintiff with a packet of materials and documents for her to take home, fill-in or sign and bring back with her when she reported to work and orientation on August 3, 2016. During this meeting the Plaintiff also produced a urine specimen as part of the pre-employment drug testing protocol.

15. Between July 25 and August 2, 2016, the Plaintiff and Ms. Mailloux communicated via email regarding the pre-employment processing and whether or not the drug testing company, Alere, had finished with its results.

16. On August 2, 2016, at approximately 3 pm, the Plaintiff received a telephone call from an Alere representative informing her that she had tested positive to marinol, the medical synthetic marijuana prescription she was using pursuant to her status as a qualified patient under CGS § 21a-408, *et. seq*.

17. The Alere representative informed the Plaintiff that they would be reporting that positive result to the defendant. The Plaintiff informed the Alere representative that she was a registered medical marijuana patient and had already disclosed that fact to the defendant, so she believed that information would not be a surprise to the Defendant.

18. Immediately following her conversation with the representative of Alere, the Plaintiff called Ms. Mailloux and left her a voice message reporting the conversation

4

and then asked some question regarding her orientation session the next day at Bride Brook, as her drug test results indicated a completion of the hiring process.

19. At approximately 3:40 pm, the Plaintiff received a telephone call from Ms. Mailloux. In the conversation Ms. Mailloux informed the Plaintiff that the Defendant was rescinding its previous job offer because the Plaintiff had tested positive for cannabis.

20. The telephone conversation with both Ms. Mailloux and the representative for Alere occurred while Ms. Noffsinger was attending a going away party for her at Touchpoints. Touchpoints had already filled the Plaintiff's positon at the time of her departure on August 2, 2016, so she was not able to remain employed by Touchpoints following Bride Brook's rescission of its offer of employment.

21. C.G.S. § 21a-408p(b)(3) prohibits an employer from discriminating against an individual by refusing to hire, discharging, penalizing or threatening an employee based on their status as a qualified patient under the statute. The statute provides that:

> No employer may refuse to hire a person or may discharge, penalize or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or primary caregiver under sections 21a-408 to 21a-408n, inclusive. Nothing in this subdivision shall restrict an employer's ability to prohibit the use of intoxicating substances during work hours or restrict an employer's ability to discipline an employee for being under the influence of intoxicating substances during work hours.

22. By refusing to hire the Plaintiff because she is a qualified patient the Defendant has violated the law pursuant to C.G.S. § 21a-408p(b)(3).

23. As result of the Defendant's conduct as described above, the Plaintiff has suffered and continues to suffer damages in the way of lost compensation, benefits and

other rights and privileges of employment.

24. As a result of the defendant's conduct as described above, the Plaintiff has suffered serious emotional distress, anxiety, pain and suffering, humiliation and mental anguish.

**COUNT TWO:** **Refusal to Hire in Violation of Public Policy**

25. The Plaintiff realleges and incorporates herein paragraphs 1-24, above.

26. The passage of the Palliative Use of Marijuana Act, C.G.S. § 21-408 *et seq.*, made clear that the public policy of the State of Connecticut is to provide employment and hiring protections for citizens of the state who qualify for the medical use of marijuana and register as qualifying patients with the Department of Consumer Protection.

27. In providing protections from discriminatory hiring decisions based on the medical use of marijuana, the legislature made clear that the public policy of the state was to ensure that qualified patients were not denied employment opportunities based on their lawful use of medical marijuana for palliative purposes.

28. The Defendant rescinded the job offer it had previously made to the Plaintiff because of her lawful use of medical marijuana and a pre-employment drug test showing such use.

29. By the acts and conduct described above the Defendant has refused to hire the Plaintiff based on her lawful use of medical marijuana in violation of the public policy of the State of Connecticut.

30. As result of the Defendant's conduct as described above, the Plaintiff has suffered and continues to suffer damages in the way of lost compensation, benefits and other rights and privileges of employment.

31. As a result of the Defendant's conduct as described above, the Plaintiff has suffered serious emotional distress, anxiety, pain and suffering, humiliation and mental anguish.

**COUNT THREE:** **Negligent Infliction of Emotional Distress**

32. The Plaintiff realleges and incorporates herein paragraphs 1-31, above.

33. The Defendant was aware that Plaintiff has PTSD, is a medical marijuana user, and left her job at Touchpoints exclusively because of defendant's request and job offer.

34. The Defendant unlawfully rescinded its previous job offer to the Plaintiff because of her lawful use of medical marijuana.

35. The Defendant rescinded the job offer on August 2, 2016, while the Plaintiff was being given a going away party by her managers and colleagues at Touch Point, her then current employer.

36. The Plaintiff was scheduled to begin work at Bride Brook the next day, on August 3, 2016.

37. By unlawfully rescinding the job offer to the Plaintiff in the manner it did, the Defendant knew, or should have known, that such conduct posed an unreasonable risk of causing emotional distress and that such distress, if caused, might result in

7

illness or bodily injury.

38. As a result of the Defendant's conduct the Plaintiff has in fact experienced severe emotional distress which has caused the Plaintiff anxiety, sleeplessness, and loss of appetite.

## **DEMAND FOR RELIEF**

WHEREFORE, the plaintiff requests that this Court award the following relief:

1. Order the defendant to make the plaintiff whole for all wages and benefits which the plaintiff has lost as a result of the defendant's conduct, including the payment of interest on all wages and benefits due;

2. Grant the plaintiff compensatory damages in excess of $15,000 exclusive of interest and costs;

3. Order the defendant to hire the plaintiff to the position for which she had been hired or grant the plaintiff future earnings damages in lieu of reinstatement;

4. Grant the plaintiff's punitive damages;

5. Grant the plaintiff attorney fees and costs;

6. Grant the plaintiff all costs and pre- and post- judgment interest; and

7. Award the plaintiff such other legal or equitable relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

THE PLAINTIFF,

By: _____
Henry E. Murray
Zachary L. Rubin
Livingston, Adler, Pulda, Meiklejohn
   & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821
Fax (860) 232-7818
hfmurray@lapm.org
zlrubin@lapm.org
Juris No. 100758

STATE OF CONNECTICUT)
                                     )         SS: Hartford, CT August 23, 2016
COUNTY OF HARTFORD )


Then and by virtue hereof and by direction of the plaintiff's attorney, I left a verified true and attested copy of the original Writ, Summons, Complaint, Demand For Relief with and in the hands of Gary Scappini, Manager, CT Corporation System, One Corporate Center, 14th Floor, Agent For Service for the within named defendant **SSN OPERATING COMPANY, LLC d/b/a BRIDE BROOK NURSING & REHABILITATION CENTER** in the said Town Of Hartford.




    The within is the original Writ, Summons, Complaint, Demand For Relief with my doings hereon endorsed.

                                                                                                          ATTEST:

                                                                                     Abraham Glassman
                                                                                     Connecticut State Marshal
                                                                                     Hartford County

| | |
|---|---|
| Service: | $ 40.00 |
| Verification: | 10.00 |
| Endorsements: | 1.20 |
| Travel: (8 Miles) | 3.78 |
| Amount: | $ 54.98 |