# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

KATELIN NOFFSINGER,
    *Plaintiff*,

v.

SSC NIANTIC OPERATING COMPANY,
LLC d/b/a BRIDE BROOK NURSING &
REHABILITATION CENTER,
    *Defendant*.

No. 3:16-cv-01938 (JAM)

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This is a case about a claim of employment discrimination on the basis of a person's use of medical marijuana as authorized under the Connecticut Palliative Use of Marijuana Act (PUMA), Conn. Gen. Stat. § 21a-408 *et seq*. PUMA prescribes qualifying conditions for a person to use marijuana for medicinal purposes. It also contains an anti-discrimination provision that bars an employer from refusing to hire a person or from discharging, penalizing or threatening an employee solely because of the person's status as a qualifying medical marijuana patient under state law. *See* Conn. Gen. Stat. § 21a-408p(b)(3).

Plaintiff Katelin Noffsinger accepted a job offer from defendant SSC Niantic Operating Company, LLC d/b/a Bride Brook Health & Rehabilitation Center. But the offer was contingent on drug testing, and plaintiff told defendant that she was qualified under PUMA to use marijuana for medical purposes to treat her post-traumatic stress disorder. After her drug test came back positive for THC consistent with the use of marijuana, defendant rescinded its job offer.

Plaintiff soon filed this lawsuit against defendant. I have previously ruled that PUMA creates a private right of action and that PUMA's anti-discrimination provision is not preempted by federal law. *See Noffsinger v. SSC Niantic Operating Co. LLC*, 273 F. Supp. 3d 326 (D.

1

Conn. 2017). Since then the parties have conducted discovery and have now cross-moved for summary judgment.

For the reasons set forth below, I conclude that plaintiff is entitled to judgment as a matter of law in her favor on her claim of employment discrimination under PUMA. On the other hand, I will grant defendant's motion for summary judgment precluding plaintiff from recovery for attorney's fees and punitive damages for her PUMA claim, and I will also grant defendant's motion for summary judgment as to plaintiff's claim for negligent infliction of emotional distress.

## BACKGROUND

Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) in 2012 after being in a car accident. Doc. #70-1 at 249-50. Her caregiver recommended treating her PTSD with medical marijuana, which she began using in 2015. *Id.* at 284. In accordance with PUMA, plaintiff registered with the Department of Consumer Protection in November 2015 as a qualifying patient for the use of medical marijuana. *Id.* at 288.

In July of 2016, defendant recruited plaintiff for the position of Activities Manager at the Bride Brook Facility. Doc. #76-1 at 1 (¶ 1). In response to the outreach, plaintiff emailed a copy of her resume to defendant. *Id.* at 2 (¶ 2). Plaintiff subsequently spoke with defendant's administrator, Lisa Mailloux, and scheduled an in-person interview for July 18, 2016. *See id.* (¶ 3). The interview was successful, and Mailloux offered plaintiff the position of Activities Manager subject to the completion of pre-employment screenings. *Id.* at 2-3 (¶¶ 4-6). Plaintiff accepted the offer on July 19. *Id.* at 3 (¶ 7).

Plaintiff and Mailloux agreed that a follow-up visit would take place on July 25 for the completion of pre-employment papers, background check, and drug screen. *Id.* at 3-4 (¶¶ 8, 10).

At this follow-up meeting, plaintiff disclosed to Mailloux her PTSD diagnosis and her participation in Connecticut's medical marijuana program. *Id.* at 4 (¶ 11). She explained that she took prescription marijuana in the evenings as a "qualifying patient" under PUMA and showed Mailloux her registration certificate and an empty pill container which displayed the name and dosage of her medical marijuana pills. *Id.* at 4-5 (¶¶ 11-12).

Following her disclosure, plaintiff provided a urine sample for the pre-employment drug screen. *Id.* at 5 (¶ 13). The test produced an initial positive result for THC, a chemical component of marijuana. *Id.* (¶ 14). Per defendant's standard procedure, the sample was also sent to a third-party drug testing company for testing. *Id.* (¶ 13).

After the meeting of July 25, Mailloux emailed the district human resources manager, Terri Taylor, to inform her that plaintiff was a medical marijuana user and tested positive for marijuana on the initial results from the urine sample. *Id.* (¶ 16). On July 29, Mailloux emailed Kate Warren, a compliance officer for defendant, and advised her that plaintiff "was on medical marijuana for night terrors," and she asked "how would that change the rational [sic] for hire [sic] based on the fact that we do not allow medical marijuana for our employees.. [sic] If there is a prescription and obviously has a diagnosis for it, how would that change the fact that we would not hire her?" Doc. #64-11 at 3.

On August 1, 2016, Warren responded to this request by explaining that plaintiff could not be hired if the third-party drug testing company confirmed the positive marijuana test. Doc. #64-11 at 2. Warren specifically stated that plaintiff "will be disqualified" from the job if the third party test returned a positive result because "[m]edical marijuana is not an approved prescription," and "we use the [f]ederal law, which indicates marijuana is still illegal." *Ibid.*

3

On August 1, Mailloux emailed Taylor to ask when she could "officially" publicize that Bride Brook was still recruiting for an Activities Manager. Doc. #64-13 at 2. Taylor advised Mailloux to wait until the results from the third party drug tester were officially posted before publicizing the vacancy. *Ibid.*

On August 2, the day before plaintiff was scheduled to start work at Bride Brook, the third party drug testing company informed plaintiff that she had tested positive for THC. Doc. #76-1 at 6 (¶ 19). Plaintiff immediately called Mailloux and left a voice message in which she informed Mailloux of a positive result for marijuana. *Id.* (¶ 20). Within a few minutes, Mailloux returned plaintiff's call and informed her that Bride Brook was rescinding plaintiff's job offer because of the results of the drug test. *Id.* at 7 (¶ 21).

On August 22, 2016, plaintiff filed a complaint in Connecticut Superior Court, alleging three causes of action: (1) a violation of PUMA's anti-discrimination provision, Conn. Gen. Stat. § 21a-408p(b)(3), (2) a common law claim for wrongful rescission of a job offer in violation of public policy, and (3) negligent infliction of emotional distress. Defendant moved to dismiss plaintiff's cause of action under PUMA (Count One), primarily on grounds that PUMA did not provide for a private right of action and that federal law preempted PUMA. I rejected these arguments. *See Noffsinger v. SSC Niantic Operating Co. LLC*, 273 F. Supp. 3d 326, 343 (D. Conn. 2017). I otherwise dismissed plaintiff's public policy claim (Count Two) but declined to dismiss plaintiff's claim for negligent infliction of emotional distress (Count Three). *See ibid.*

Following discovery, the parties have now filed cross-motions for summary judgment. Plaintiff seeks summary judgment on her PUMA claim in Count One. Defendant seeks summary judgment dismissing both the PUMA claim in Count One and the negligent-infliction-of-

4

emotional-distress claim in Count Three, as well as summary judgment denying plaintiff's claim for attorney's fees and punitive damages for her PUMA claim.

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

### *Employment discrimination in violation of PUMA*

The parties have cross-moved for summary judgment on plaintiff's claim that defendant discriminated against her in violation of PUMA when it rescinded her job offer. The statute provides in relevant part:

> [U]nless required by federal law or required to obtain funding: . . . (3) No employer may refuse to hire a person or may discharge, penalize or threaten an employee solely on the basis of such person's or employee's status as a qualifying patient or primary caregiver under sections 21a-408 to 21a-408n, inclusive. Nothing in this subdivision shall restrict an employer's ability to prohibit the use of intoxicating substances during work hours or restrict an employer's ability to discipline an employee for being under the influence of intoxicating substances during work hours.

Conn. Gen. Stat. § 21a-408p(b)(3).

5

The facts are undisputed here that plaintiff's job offer was rescinded because of her positive drug test result and that this positive drug test result stemmed from plaintiff's use of medical marijuana pursuant to her qualifying status under PUMA. Although defendant raises several arguments to avoid the grant of summary judgment, I conclude for the reasons below that all of these arguments are meritless.

First, defendant argues that it is exempt from PUMA's anti-discrimination provision because the statute allows for an exception if discrimination is "required by federal law or required to obtain federal funding." Conn. Gen. Stat. § 21a-408p(b). According to defendant, the federal Drug Free Workplace Act (DFWA) barred it from hiring plaintiff. The DFWA requires federal contractors like defendant to make a "good faith effort" to maintain a drug-free workplace by taking certain measures, such as publishing a statement regarding use of illegal drugs in the workplace and establishing a drug-free awareness program. *See* 41 U.S.C. § 8102. Defendant states that it adopted its substance abuse policy in order to comply with the DFWA, such that any actions it takes in accordance with that policy are outside the scope of liability under § 21a-408p.

I do not agree that the DFWA required defendant to rescind plaintiff's job offer. The DFWA does not require drug testing. *See Harris v. Aerospace Testing All.*, 2008 WL 111979, at *4 (E.D. Tenn. 2008). Nor does the DFWA prohibit federal contractors from employing someone who uses illegal drugs outside of the workplace, much less an employee who uses medical marijuana outside the workplace in accordance with a program approved by state law. That defendant has chosen to utilize a zero tolerance drug testing policy in order to maintain a drug free work environment does not mean that this policy was actually "required by federal law or required to obtain federal funding." Accordingly, I reject defendant's argument that it would

violate the DFWA for it to hire someone like plaintiff who uses medical marijuana during off-hours.

Defendant further argues that the federal False Claims Act bars it from hiring plaintiff, allegedly because its employment of someone who uses medical marijuana in violation of federal law would amount to a defrauding of the federal government. But because there is no federal law that bars defendant from hiring plaintiff on account of her medicinal use of marijuana outside work hours, it would not constitute fraud on the federal government for defendant to hire plaintiff.

Defendant next argues that PUMA prohibits discrimination only on the basis of one's *status* as an approved medical marijuana patient but not on account of one's *use* of medical marijuana in accordance with a PUMA program. For this argument, defendant relies on the language of the statute that forbids an employer from refusing to hire someone "solely on the basis of such person's or employee's status as a qualifying patient." Conn. Gen. Stat. § 21a-408p(b)(3). But the language and purpose of the statute make clear that it protects employees from discrimination based on their use of medical marijuana pursuant to their qualifying status under PUMA. Under defendant's restrictive interpretation of the statute, employers would be free to fire status-qualifying patients based on their actual use of medical marijuana—the very purpose for which a patient has sought and obtained a qualifying status. That makes no sense and would render the statute's protection against PUMA-based discrimination a nullity, because there would be no reason for a patient to seek PUMA status if not to use medical marijuana as permitted under PUMA.

Moreover, the statute provides that "[n]othing in this subdivision shall restrict an employer's ability to prohibit the use of intoxicating substances during work hours or restrict an

7

employer's ability to discipline an employee for being under the influence of intoxicating substances during work hours." *Ibid.* By negative implication, this language makes clear that PUMA protects a qualifying patient for the use of medical marijuana outside working hours and in the absence of any influence during working hours.

Defendant also argues that plaintiff herself has created a genuine fact issue about why her job offer was rescinded, because she filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) claiming that defendant rescinded her job offer on account of her PTSD. But this claim was true in the sense that her PTSD accounted for her use of medical marijuana under PUMA. In any event, notwithstanding anything that plaintiff later told the CHRO, the actual facts of this case are undisputed that defendant decided not to hire plaintiff because of her use of medical marijuana in accordance with PUMA. There are no facts in this record to suggest that defendant was hostile to plaintiff simply because she had PTSD. To the contrary, defendant itself concedes that it rescinded the job offer because it "was unable to hire Plaintiff because of the positive drug test results for THC." Doc. #86 at 3. Defendant admits that it "informed the Plaintiff that the Defendant was rescinding its previous job offer because of the results of the drug test." Doc. #76-1 at 7 (¶ 21).

Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). The doctrine ordinarily applies when "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some

way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Ibid*. (quotation and citation omitted). This doctrine applies as well to statements made in "administrative or quasi-judicial proceedings." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997).

Here, there is no indication that the CHRO has in any way adopted or accepted plaintiff's claim that she was discriminated against on the basis of her PTSD. In fact, plaintiff has already requested to withdraw the matter before the CHRO. Doc. #86 at 2. Because "judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements," judicial estoppel does not apply to this case. *In re Adelphia Recovery Tr.*, 634 F.3d 678, 696 (2d Cir. 2011). Moreover, plaintiff's claim that she was discriminated against based on her PTSD is not "clearly inconsistent" with her claim in the instant case that she was discriminated for using medical marijuana to treat her PTSD. *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004) (no judicial estoppel if claims are not in "irreconcilable direct conflict"). Accordingly, notwithstanding plaintiff's allegedly inconsistent claim to the CHRO, I conclude that the doctrine of judicial estoppel does not apply here and that this claim does not create a material issue of fact concerning why defendant rescinded plaintiff's job offer.

Defendant further argues that plaintiff allegedly used Marinol, a Schedule III substance, rather than medical marijuana under PUMA. *See John Doe, Inc. v. DEA*, 484 F.3d 561, 564 (D.C. Cir. 2007) (discussing Marinol). It is true that in her complaint, deposition, and briefing, plaintiff repeatedly describes the pill she ingested as "Marinol," a synthetic form of THC. Plaintiff now rejoins that the medicine she used was not actually Marinol, but synthetic marijuana pills obtained through Connecticut's medical marijuana program. Doc. #80 at 1-2. She

states that she erred in using the term "Marinol" and had assumed that that was the trade name for her pills because that was the term used by the third party drug testing company.

There is no dispute that plaintiff is a qualifying patient under PUMA, that she consumes synthetic marijuana pills pursuant to that status, and that the positive THC test results stemmed from this protected marijuana use. It is equally clear that both parties were aware of all of these facts. The parties agree that plaintiff told defendant that "she was a participant in the Connecticut medial marijuana program and used medical marijuana in the evening" and that plaintiff showed Mailloux "an empty pill container which displayed the name and dosage of her medical marijuana pills." Doc. #76-1 at 4-5 (¶¶ 11-12). The defendant itself notes that "Ms. Noffsinger tested positive for THC, not 'marinol.'" Doc. #70 at 6. Because the record is clear that plaintiff used medical marijuana pursuant to her qualifying patient status rather than Marinol, there is no merit to defendant's argument that plaintiff's activity was not within the scope of activity subject to protection under PUMA.

In short, I conclude that plaintiff is entitled to summary judgment under Count One and that all of defendant's opposing arguments lack merit. There are no genuine fact issues in dispute about why plaintiff's job offer was rescinded, and there is no legitimate dispute that defendant's rescinding of plaintiff's job offer was contrary to plaintiff's right not to be subject to discrimination because of her status as a qualifying patient under PUMA. Accordingly, I will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment as to Count One.

*PUMA attorney's fees and punitive damages*

Defendant also moves for summary judgment on plaintiff's request for punitive damages and attorney's fees on the ground that plaintiff may not recover such damages under PUMA. In

my ruling on the motion to dismiss in this case, I concluded that § 21a-408p(b)(3) contains an implied private right of action. *Noffsinger*, 273 F. Supp. 3d at 341. Defendant argues that even though I have found an implied private right of action under the statute, I should still conclude that plaintiff may not obtain an award of attorney's fees or punitive damages on her implied right of action. I agree.

The Connecticut Supreme Court has held that absent a clear statutory provision granting attorney's fees, a court may not award such fees "because allowing such damages would be in derogation of the common-law American Rule that, absent a contractual or statutory exception, attorney's fees are not allowed to the successful party." *Tomick v. United Parcel Serv., Inc.*, 324 Conn. 470, 480 (2016) (citing *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 532–33 (2004)). The Connecticut Supreme Court extended this logic to punitive damages and concluded that "in the absence of express authority for such damages or significant extratextual evidence" a court should decline to imply punitive damages as a remedy under a statute that does not expressly provide for such damages. *Id.* at 481 n.14. In light of the fact that PUMA does not expressly provide for attorney's fees or punitive damages and in the absence of any other evidence that the Connecticut legislature intended to provide such a remedy, I decline to imply these remedies under the statute. Accordingly, I will grant defendant's motion for summary judgment as to plaintiff's request for attorney's fees and punitive damages for her PUMA cause of action.

### *Negligent infliction of emotional distress*

Defendant has also moved for summary judgment on plaintiff's claim for negligent infliction of emotional distress. To prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct created an unreasonable risk of

11

causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Hall v. Bergman*, 296 Conn. 169, 182 n.8 (2010) (internal quotation marks and citation omitted). In the employment context, a negligent-infliction-of-emotional-distress claim may not be predicated merely on the fact that an employer has terminated an employee's employment even if the reason for termination is wrongful. *See Parsons v. United Technologies Corp.*, 243 Conn. 66, 88-89 (1997). Instead, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant *in the termination process*." *Id.* at 88 (emphasis added; internal quotation marks omitted).

Defendant argues that there is no material dispute of fact regarding whether its conduct created an unreasonable risk of causing plaintiff emotional distress. Defendant emphasizes that its conduct was at all times professional and courteous and that requiring employees to undergo pre-employment screenings is routine practice in the industry. Plaintiff argues that defendant knew by July 25 that plaintiff was a medical marijuana user and that it would not hire plaintiff if the third-party drug test produced a positive result, but that defendant failed to inform plaintiff that it was rescinding the job offer until eight days later on August 2 when it received the positive drug result confirmation.

I do not agree that defendant's delay rises to the level necessary to support an emotional distress claim. Notwithstanding any delay by defendant during the time that it took to confirm the drug test result, plaintiff suffered no harm from this delay because she had already given her prior employer her two-weeks notice on July 20, some five days before she first told defendant of her medical marijuana status on July 25. Despite knowing that her employment offer was

12

contingent on successful background screenings, she chose to give her two-weeks notice to her employer prior to the conclusion of the background check and prior to disclosing her medical marijuana use. The record does not show that defendant engaged in any unreasonable conduct in the manner that it communicated with plaintiff, much less that plaintiff lost out on her opportunity to remain with her prior employer as a result of any delay by defendant in rescinding the job offer. Accordingly, I will grant summary judgment to defendant on plaintiff's claim for negligent infliction of emotional distress.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment (Doc. #64) is GRANTED as to her PUMA discrimination claim alleged in Count One. Defendant's motion for summary judgment (Doc. #66) is DENIED as to plaintiff's PUMA discrimination claim alleged in Count One but GRANTED as to plaintiff's request for attorney's fees and punitive damages for her PUMA claim and GRANTED as to plaintiff's claim for negligent infliction of emotional distress alleged in Count Three. The parties shall file their joint trial memorandum with respect to a trial for compensatory damages as to Count One by October 5, 2018.

It is so ordered.

Dated at New Haven this 5th day of September 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge